VILLAGE OF EAST ROCHESTER, Respondent, *v.* ROCHESTER GAS AND ELECTRIC CORPORATION and BANKERS TRUST COMPANY, Appellants, and VANDERBILT IMPROVEMENT COMPANY and DESPATCH BUILDING COMPANY, Defendants.

JAMES O'FLYNN, a Taxpayer of the Village of East Rochester in the State of New York, Suing on Behalf of Himself and Other Taxpayers in Said Village Similarly Situated, Plaintiff, and ROCHESTER GAS AND ELECTRIC CORPORATION, DESPATCH SHOPS, INC., and FRANK FLIERL, Plaintiffs, Intervenors, Appellants, *v.* VILLAGE OF EAST ROCHESTER and Others, Respondents.

Fourth Department, November 7, 1941.

In action No. 1: *Whitman, Dey & Nier* [*Earl L. Dey* and *George J. Nier* of counsel], for the appellant Rochester Gas and Electric Corporation.

*Naylon, Aronson & Foster* [*Edmund B. Naylon* and *George Foster, Jr.,* of counsel], for the appellant Bankers Trust Company.

*Carlton F. Bown* [*Percival D. Oviatt* of counsel], for the respondent.

In action No. 2: *Whitman, Dey & Nier* [*Earl L. Dey* and *George J. Nier* of counsel], for the plaintiff intervenor, Rochester Gas and Electric Corporation, appellant.

*Harris, Beach, Folger, Bacon & Keating* [*Paul Folger* and *Keith D. Poland* of counsel], for the plaintiff intervenor, Despatch Shops, Inc., appellant.

*Leo J. Rice,* for the plaintiff intervenor Frank Flierl, appellant.

*Carlton F. Bown* [*Percival D. Oviatt* of counsel], for the respondents.

HARRIS, J. The litigation in both of these actions arises from an endeavor to establish a municipally owned electric plant in the village of East Rochester. The plant would furnish power to the village for its own purposes, and for compensation would provide power to private customers within the village. In order to carry out such plan the village of East Rochester, through its board of trustees, has presented to the voters by means of a mandatory referendum a proposition as to the establishment of such a project by the village, and at the election a majority of voters approved such project. Unless there is valid objection to such project, the village is now in a position to proceed with the same.

The first-entitled action is one in which the village seeks a declaratory judgment as to its right to use its streets for the purposes of such project.

In the second-entitled action a taxpayer has brought the action on behalf of himself and other taxpayers similarly situated, with the object of having declared invalid the election and to restrain the defendant village from proceeding with the project.

In such second action, the plaintiff Frank Flierl has intervened as another interested taxpayer, and the plaintiffs Rochester Gas and Electric Corporation and Despatch Shops, Inc., have intervened as parties interested both as taxpayers and as owners of substantial rights which, if the project is carried out, they claim will be taken away in violation of their constitutional rights. The plaintiff Despatch Shops, Inc., owner of one of the largest industrial pieces of property in the village of East Rochester, and one of the largest taxpayers therein, claims that in planning the project the village of East Rochester deliberately intends to exclude Despatch Shops, Inc., from being a possible customer for the power to be provided by the project.

Whether the village of East Rochester should have a judgment favorable to itself in the first action, depends largely on the question as to whether or not Rochester Gas and Electric Corporation

has a right as against the village of East Rochester and all others, exclusively, to use the streets of the village for the transmission and distribution of electricity. Such claimed exclusive right is also the basis of the main defense of Rochester Gas and Electric Corporation in this action.

Although these are two separate actions and brought to this court on two separate appeals, the history of the corporate parties involved, and that of their predecessors, contains a set of facts which goes largely to the determination of the merits of both actions and of both appeals.

Prior to and in 1897 there came into existence Despatch Heat, Light & Power Company (predecessor of Rochester Gas and Electric Corporation), the Vanderbilt Improvement Company and Despatch Building Company. These latter named two companies controlled large tracts of land that are now the territory included in the village of East Rochester. In June, 1897, and December, 1897, and later, these companies filed subdivision maps which showed the territory laid out in such village and including building lots and streets. Lots from the subdivisions were sold as laid out on these maps for many years prior to the incorporation of the village. All lots were sold by lot numbers and by reference to the filed maps. From June 14, 1897, to July 31, 1905, there were conveyed some 360 lots without reservation of title in the streets. From April 27, 1901, down to July 31, 1905, there were also approximately 361 conveyances of lots which contained the following clause: "Excepting and reserving therefrom the street or streets abutting upon said premises, the fee of which subject to the use of said street or streets as a highway or highways, is retained in the Vanderbilt Improvement Company." During this period from April, 1901, to July, 1905, certain lots were sold without such reservation and some with such reservation. The town authorities put up a schoolhouse in 1898, and Methodist and Catholic churches were built within the period from 1901 to 1906. Many houses were built during that period. It is significant of the intention of the grantors as to the purposes for which the lands were laid out on the maps that in at least one case (a deed dated August 4, 1897, from Vanderbilt Improvement Company to one Fryatt, recorded September 27, 1897, in liber 589 of Deeds at page 298), in restricting the uses of the premises as against the sale of liquor, the restrictions contained the following: "until said lot shall be included in a duly incorporated village," and equally significant of the viewpoint of the town of Perinton as to such intention in reference to that portion of these lands lying in that town, an assessment roll of the town of Perinton bears the heading

" Village of Despatch," a description which the testimony shows was the local method of referring to the tract before it was included by the incorporation in the village of East Rochester. In 1901 there was incorporated Despatch Heat, Light and Power Corporation, organized to provide gas and electricity to the territory involved in this action. In 1905 there was incorporated a water company. In 1904 a sewage company was incorporated to deal with municipalities, and in the same year the Vanderbilt Company granted to the sewage company a non-exclusive right to use the streets for sewage purposes. In 1904 Walter A. Parce, who was largely interested in these properties, transferred to Despatch Heat, Light and Power Corporation his business of electric lighting in the so-called villages of Desptach and Penfield. (Neither of these so-called villages were incorporated, but they later became the location of the present village of East Rochester.) By deed dated July 15, 1904, the Vanderbilt Improvement Company conveyed to Despatch Heat, Light and Power Company the right to use the streets for the purpose of distributing electricity, but such right was not exclusive. By separate deeds, each dated July 27, 1905, and recorded in the county clerk's office, the Vanderbilt Improvement Company and Despatch Building Company gave to Despatch Heat, Light and Power Corporation " the sole, exclusive and perpetual right to use the streets for electric plant purposes." By deeds dated May 1, 1906, the Vanderbilt Improvement Company granted to the two towns whose land lay in the present village of East Rochester strips of land constituting streets for the uses and purposes of public highway or highways and for no other purposes whatsoever. These last specified grants were made subject to prior grants, rights, privileges and franchises. Rochester Gas and Electric Corporation, party to these actions, claims under any and all rights formerly held by its predecessor, Despatch Heat, Light and Power Corporation.

The village of East Rochester was incorporated October 18, 1906, pursuant to the Village Law of the State of New York, and now has a population of some 7,000 persons. Rochester Gas and Electric Corporation owns real estate in the village of East Rochester. The interest of the Bankers' Trust Company, which is a party to the first-entitled action, is that of mortgagee holding as collateral security a mortgage for the payment of the bonds of the Rochester Gas and Electric Corporation. The mortgage was executed September 1, 1918. Rochester Gas and Electric Corporation served the village and its inhabitants with power for many years until, due to fault found by the village with the charges for lighting the streets, negotiations arose to reduce the charges, the result of which negotiations decidedly did not benefit the village and its residents, and as a consequence of such result the village endeavored

to save money by reducing the amount of power taken for street purposes. This attempted reduction was not satisfactory to the village authorities, and in 1938 the village employed an engineer by the name of Reynolds, and later an engineering firm named Burns & McDonnell, to advise the village as to the practicability of a project for the village to go into the electric light and power business.

As Rochester Gas and Electric Corporation claims that it has exclusive easements to the use of the streets in the village for the transmission of power, the village of East Rochester feels itself unsafe in carrying out the project until it first has obtained a declaration of judgment from the Supreme Court as to whether or not such claim of Rochester Gas and Electric Corporation to exclusive easements in the streets for similar purposes is valid, and so action No. 1 was brought.

In action No. 2, the plaintiffs, both original and intervening, attack the project as invalid due to what they claim to be defects in necessary procedure in presenting the proposition for a vote, and a further objection is made by Despatch Shops, Inc., and one of the individual taxpayers, to the effect that the project if carried out would be discriminatory against certain taxpayers and, therefore, a violation of constitutional rights of the individual taxpayers.

It is best first to discuss the question of whether or not Rochester Gas and Electric Corporation, through its accession to the rights of Despatch Heat, Light and Power Company, has exclusively the right to the use of the streets and highways in the village of East Rochester for such purposes. If it has such a right, then either the village of East Rochester must drop its proposed project, or seek to dispose of such right by means of compensation to the holder of the right.

Rochester Gas and Electric Corporation claims under the deeds above referred to, which endeavored to grant such an exclusive right and which, as has been indicated, were given and recorded shortly before the incorporation of the village of East Rochester. The village claims that such deeds were invalid to convey exclusive rights, and such claim is based on an alleged dedication of the streets at the time that the plots were originally laid out in 1896, the later granting of title to lots to hundreds of persons, including individuals, churches and the village for school purposes, of lots with no reservation of street rights by the grantors, and that the granting of such a right would be a monopoly in derogation of the rights of the village and individual property owners in the village.

A study of the record herein, and the history as given above, lead to the conclusion that, in laying out the plots of land which

were then in the so-called villages of Despatch and Penfield and in the towns of Perinton and Pittsford, and by subsequent sales of hundreds of lots which did not reserve any rights, the grantors of such lots (the Vanderbilt interest predecessors) dedicated such streets to public purposes and could not revoke such dedication later by an attempt to give exclusive rights in such streets to a public utility, at least without the consent of those who became owners and taxpayers in the territory. Even such consent is lacking here. The former deed to the towns of the lands for street purposes included necessarily the right of the municipal authorities to light such streets and to make use of the ground under the streets for transmission purposes of the power for such lighting. It is well to note at this point that in the year 1905 before the incorporation of the village of East Rochester, Desptach Heat, Light and Power Company applied for and received from the towns of Pittsford and Perinton non-exclusive consents or franchise to use the streets in said towns for distribution and transmission of electric energy, and thereafter did distribute electric energy through the streets which are now streets in the village of East Rochester, and that subsequent thereto and on the 1st day of April, 1925, the defendant Rochester Gas and Electric Corporation applied for and was granted by the village of East Rochester a non-exclusive consent or franchise permitting it to use the streets of East Rochester for such purposes of transmission and distribution, and has proceeded to distribute electric energy in such streets. Such action on the part of Rochester Gas and Electric Corporation and its predecessor, Depatch Heat, Light and Power Company, are indicative of the fact that neither of these companies claimed at the time of such applications and consents exclusive rights as they now claim. Dedication of the property for municipal purposes and concession (highway lighting is such a purpose) (*N. Y. C. R. R. Co.* v. *Middleport Gas & Electric Light Co.*, 193 App. Div. 273; affd., 232 N. Y. 622; *N. Y. C. R. R. Co.* v. *Bailey*, 209 App. Div. 850) of the right of the village and the town to control franchises for the distribution and transmission of power, clearly indicate Rochester Gas and Electric Corporation never has had, and has not now, any exclusive rights in the streets of the village of East Rochester. But even more important as pointing favorably to a declaration that Rochester Gas and Electric Corporation has no exclusive right to use the streets in the village of East Rochester or against such village, is the very fact that in adopting article 14-A of the General Municipal Law, the Legislature intended to, and did, furnish to municipalities the right to compete with existing public utility corporations. If an existing privately owned public utility corporation had an exclusive

right to the use of streets in any municipality, the municipality so affected could not act to its own interest under the provision of article 14-A of the General Municipal Law. In adopting article 14-A of the General Municipal Law, it is clear that so far as the Public Service Law is concerned, the Legislature did not put municipally owned plants in the same category as privately owned plants. This is said because the act itself permits a municipality to father a public utility project without the consent of the Public Service Commission. (Gen. Municipal Law, art. 14-A, § 360, subds. 2, 4, and § 364.) It has been argued that a so-called " exclusive right " is a property right that cannot be taken away without compensation. This could not have been the viewpoint of the Legislature in adopting article 14-A of the General Municipal Law, because, if it were, then the Legislature has provided a means for relief which could be only of value to those municipalities which have no existing plants with the so-called " exclusive " privilege either in their charters, or, as in this case, the Rochester Gas and Electric Corporation claims to have by means of deed. It is true that any physical facilities that the Rochester Gas and Electric Corporation has in the village of East Rochester cannot be disturbed by the village without compensation to that corporation. (*Los Angeles* v. *Los Angeles Gas & Electric Corporation*, 251 U. S. 32.) But there is nothing in this *Los Angeles* case which has to do with so-called " exclusive right." One must necessarily come to the conclusion that article 14-A of the General Municipal Law is constitutional and gives the right to all municipalities to enter into competition with public utilities corporations where such other public utilities corporations have so-called " exclusive rights." It may well be concluded that the Legislature in adopting article 14-A intended, as it had a right to do, to change the corporate privileges of existing public utilities corporations using public highways for their business so that they should cease to be exclusive as against municipalities. This being so, the declaration as granted in the court below, holding that there was no such exclusive rights, should be upheld by affirmance in this court.

In action No. 2, that brought against the village of East Rochester to have declared invalid the election by referendum and to restrain the village from proceeding with the project of a municipal electric plant, the appellants base their claim for judgment on the following contentions: (1) That the village officers failed to comply with the methods prescribed by statute for the submission of the proposition to the voters. If the appellants are correct in this contention, then certainly they are entitled to judgment. (*Matter*

*of Tierney* v. *Cohen*, 268 N. Y. 464.) (2) That under the project the village has deliberately made no provision to supply Despatch Shops, Inc., with power. (3) That in form the question submitted to the voters was too general and not specific enough to come within the provisions of the statute.

The third ground above stated goes to the question of the contents of the proposition submitted to the voters on election day, and an examination of the same shows that there was substantial compliance with the provisions of the law, and that full information was thus given to the voters as intended by the statute.

The first basis of the appellants' claim depends on the construction to be given subdivisions 3, 4 and 5 of section 360 (Art. 14-A) of the General Municipal Law. Such subdivisions 3, 4 and 5 have to do with the manner of the submission of the question to the voters, and in so far as pertinent, are quoted:

" 3. The proposed method of constructing, * * * furnishing such service shall be fixed * * * by a village ordinance in the case of a village, * * *.

" 4. * * * Authority to enact such an ordinance for a village is hereby conferred upon the board of trustees of the village * * *.

" 5. Any such action by the board of trustees of a village, before taking effect, shall be submitted for the approval of the electors of the village at the next general election in such village to be held not less than ninety days after the adoption thereof; or at a special election called in the same manner as provided in the village law for the submission of a proposition at a special village election. Such submission shall be in the manner provided by, and in accordance with the provisions of the village law for the submission of any other question by referendum or petition, except that the referendum on the proposition provided for in this section shall be mandatory. * * *"

The appellants claim that section 90 of the Village Law and section 139 of the Village Law were both provisions that should have been followed in adopting the ordinances and submitting the question to the voters. In substance, section 90 of the Village Law provides that ordinances may be enacted " not inconsistent with existing law, for the government of the village, the management of its business, the preservation of good order, peace, health, safety and welfare of its inhabitants and the protection and security of their property * * *." Provision is made in such section for giving notice of such public hearing by publication and posting.

Section 139 of the Village Law has to do with the submission for permissive referendum of actions of the board of trustees,

and so far as pertinent herein, is quoted: " Within ten days after the adoption of any resolution by the board of trustees which is subject to a permissive referendum as above defined, the village clerk shall * * * post and publish a notice which shall set forth the date of the adoption of the resolution and contain an abstract of such act or resolution concisely stating the purpose and effect thereof."

It has been conceded that there was no public hearing in reference to the ordinance providing for the mandatory referendum for the municipal lighting system project and there was no posting and publication of the notice of adoption by the board of trustees of the ordinance providing for the mandatory referendum in reference to the municipal lighting project. The answer to this contention of the appellants as to the necessity of observing the provisions of sections 90 and 139 of the Village Law is as follows: It is apparent that, although the Legislature in article 14-A of the General Municipal Law used the term " ordinance " in referring to the preliminary action necessary on the part of the board of trustees prior to the holding of the mandatory referendum, it intended to use such word " ordinance " as an equivalent of " resolution." Further, the context of article 14-A, especially as contained in section 360 thereof, provided a complete method for the passage of the ordinance, giving publicity thereto and permitting the voters to express their opinion and pass thereon. This being so, it must be held that neither section 90, nor section 139, of the Village Law is applicable to the matters now under consideration. The third ground advanced by the appellants, to wit, that the village in the project has made provision that there be no benefit service or power available to the appellant, Despatch Shops, Inc., would be sufficient ground to nullify the action of the village so far taken in reference to the project, if the facts squared with such contention.

Subdivision 3 of section 65 of article 4 of the Public Service Law provides, so far as pertinent, as follows: " No * * * municipality shall make or grant any undue or unreasonable preference or advantage to any person, corporation or locality, or to any particular description of service in any respect whatsoever, or subject any particular person, corporation or locality or any particular description of service to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Some attention must now be given to the question as to whether or not there is any undue or unreasonable preference or unreasonable prejudice or disadvantage to the appellant, Despatch Shops, Inc., or any other taxpayer. The facts as set forth in the record

herein and as found in regard to this phase of the case are as follows: Despatch Shops, Inc., is the owner of real property in the village of East Rochester, paying a tax on what is about one-fifteenth of the entire assessed valuation of the village. Due to constitutional limitation the taxable resources of the village, the amount available for the construction of the village plant as projected would be insufficient to build a plant that would generate enough power for all of the taxpayers and residences and industries in the village. There is no doubt that the project as passed on by the voters provides for a plant which will be sufficient to generate only power enough to furnish the same to those users in the village, other than Despatch Shops, Inc. In preparing plans and specifications and providing for the plant, the trustees of the village felt warranted in the conclusion that Despatch Shops, Inc., under present conditions, would not be a customer of the local plant; and due to the limit of debt resources and this conclusion in reference to the availability of Despatch Shops, Inc., as a customer, the proposed plant is limited in capacity. The conclusion that the board of trustees thought that Despatch Shops, Inc., would not be a customer at present, is based on undisputed proof that for some reason Despatch Shops, Inc., has purchased its power from Rochester Gas and Electric Corporation at a price considerably lower than the village plant as projected could afford to furnish such power. But from these facts it need not be deduced that there is a discrimination against Despatch Shops, Inc., as a taxpayer, or against any other individual taxpayer, by reason of not providing for a plant large enough to provide Despatch Shops, Inc., with its needs. Despatch Shops, Inc., will be benefited by the present project in so far as the village in which it pays taxes uses power for street lighting and for its public purposes, water works, schools and other necessities of the village. So this is not a true case of discrimination with utter lack of benefit so far as to be called "undue or unreasonable." Further, the statute (Gen. Municipal Law, art. 14-A) does not confine municipal service from that obtained from a local plant, but is broad enough to permit the village project to purchase power from other sources. So that, if Despatch Shops, Inc., should desire to do business with the village, the village could, by the purchase of power coming from outside of its own plant, furnish such service to Despatch Shops, Inc. There is a further argument that failure to furnish power to Despatch Shops, Inc., would deprive other taxpayers of the gain to be obtained from that added customer, and this would result in illegal taxation for deficits arising from the project. There is no proof that there would be such a deficit, and if such a deficit did occur in the future, the public authorities would be required to spread the tax only on benefited property.

Conclusion is reached from the foregoing that the appellants in action No. 2 have failed to make a case against the respondents, and the judgment below should be affirmed, without costs of this appeal to any party.

In action No. 1: All concur, except DOWLING, J., who dissents and votes for reversal and for dismissal of the complaint. Present — CROSBY, P. J., CUNNINGHAM, TAYLOR, DOWLING and HARRIS, JJ.

Judgment affirmed, without costs of this appeal to any party.

In action No. 2: All concur. Present — CROSBY, P. J., CUNNINGHAM, TAYLOR, DOWLING and HARRIS, JJ.

Judgment affirmed, without costs of this appeal to any party.