JAMES O'FLYNN, a Taxpayer of the Village of East Rochester, Suing on Behalf of Himself and Other Taxpayers in Said Village Similarly Situated, Plaintiff; ROCHESTER GAS & ELECTRIC CORPORATION et al., Plaintiffs, Interveners, Appellants, and FRANK FLIERL, Plaintiff, Intervener, *v.* VILLAGE OF EAST ROCHESTER et al., Respondents.

Argued November 22, 1943; decided March 2, 1944.

*Earl L. Dey* and *George J. Nier* for Rochester Gas & Electric Corporation, appellant. I. The admitted disregard by the village officials of the statutory commands with respect to the enactment of village ordinances renders the purported ordinance establishing a municipal electric plant for the Village of East Rochester void and of no effect. (*Smith* v. *City of Newburgh,* 77 N. Y. 130; *In re The Petition of George Douglas,* 46 N. Y. 42; *City of Glens Falls* v. *Standard Oil Co.,* 127 Misc. 104; *Matter of Tierney* v. *Cohen,* 268 N. Y. 464; *Town of Cortlandt* v. *Village of Peekskill,* 281 N. Y. 490; *Weeks* v. *City of Middletown,* 107 App. Div. 587; *McKuskie* v. *Hendrickson,* 128 N. Y. 555; *Matter of Collins* v. *City of Schenectady,* 256 App. Div. 389; *Case* v. *Los Angeles Lumber· Co.,* 308 U. S. 106; *Perkins et al.* v. *Smith et al.,* 116 N. Y. 441; *Moskowitz* v. *Marrow,* 251 N. Y. 380; *United States* v. *Merriam,* 263 U. S. 179; *People ex rel. N. Y. C. etc., R. R. Co.* v. *Woodbury,* 208 N. Y. 421.) II. The failure of the village to include provisions for service to Despatch Shops, Inc., constitutes an unlawful discrimination, and the subjection of that taxpayer to possible taxation without benefit is unconstitutional and renders the entire proposal illegal, void and of no effect. (*People ex rel. W. U. Tel. Co.* v. *P. S. Comm.,* 230 N. Y. 95; *New York & Queens Gas Co.* v. *McCall,* 245 U. S. 345; *Public Service Comm.* v. *Iroquois Natural Gas Co.,* 189 App. Div. 545, 229 N. Y. 592; *Armour Packing Co.* v. *Edison El. Illuminating Co.,* 115 App. Div. 51; *Delaware, L. & W. R. R. Co.* v. *City of Buffalo,* 115 N. Y. S. 657, 132 App. Div. 946; *Gaynor* v. *Marohn,* 268 N. Y. 417.)

*Paul Folger* and *Keith D. Poland* for Despatch Shops, Inc., appellant. I. A municipality cannot initiate a proposed proprietary project designed to serve a portion only of the inhabitants thereof without pledging the faith and credit of the entire

municipality behind the indebtedness to be incurred. Those excluded from service are thereby subjected to taxation without benefit. (N. Y. Const., art. VIII, § 2; *Matter of Tierney* v. *Cohen,* 268 N. Y. 464; *New York Edison Co.* v. *City of New York,* 268 N. Y. 669.) II. The project proposed by the Village of East Rochester, which admittedly is incapable of supplying the needs of Despatch Shops, Inc., is discriminatory and hence void. III. The respondents did not follow the statutory directions leading up to the submission of the proposition for the construction of this municipal electric plant. Such omissions render the proceedings taken void. (*Matter of Collins* v. *City of Schenectady,* 256 App. Div. 389; *City of Glens Falls* v. *Standard Oil Co.,* 127 Misc. 104; *People* v. *Wainwright,* 237 N. Y. 407; *Perkins et al.* v. *Smith et al.,* 116 N. Y. 441.)

*Percival D. Oviatt* and *Carlton F. Brown* for respondents. I. It was not necessary either to give notice or to hold a hearing under section 90 of the Village Law, nor was it necessary to post and publish the ordinance under section 139 of the Village Law. (*Burke* v. *Kern,* 287 N. Y. 203; *Scott* v. *Twombley,* 20 App. Div. 535; *People* v. *Averill,* 124 Misc. 383.) II. The procedure required by the law was duly followed and the documents relating to the election were adequate and not misleading. III. The plan of the project is valid even though it might be said to involve service to all except Despatch Shops, Inc. (*N. Y. State El. & Gas Corp.* v. *City of Plattsburgh,* 281 N. Y. 450; *Armour Packing Co.* v. *Edison El. Illuminating Co.,* 115 App. Div. 51; *New York & Queens Gas Co.* v. *McCall,* 219 N. Y. 84, 245 U. S. 345; *A. T. & T. Co.* v. *United States,* 299 U. S. 232; *Matter of New Rochelle Water Co.* v. *Maltbie,* 248 App. Div. 66.) IV. Rates can and should be adjusted to prevent a loss and the action of the electorate in establishing a project which might involve high rates is conclusive. (*Matter of Village of Boonville* v. *Maltbie,* 156 Misc. 6, 245 App. Div. 468, 272 N. Y. 40.)

THACHER, J. This action was brought by a taxpayer against the Village of East Rochester, its Mayor and Trustees to enjoin the defendants from proceeding with the construction of a public utility service for the generation and transmission of electricity for light, heat and power to said Village and to

its inhabitants, from expending Village funds and from borrowing money upon Village credit for such purposes.

The intervening plaintiff Rochester Gas & Electric Corporation is engaged in the production, distribution and sale of electricity in the Village of East Rochester and in other neighboring places. It is a taxpayer of the Village and has a substantial capital investment in an electric plant and system which is presently used in serving the public in said Village and in contiguous territory. The intervening plaintiff Despatch Shops, Inc. is also a taxpayer of the Village and requires, in carrying on its business of manufacturing and repairing railroad cars, equipment and supplies, more than twice as much current as the rest of said Village uses for all purposes. It is presently served by Rochester Gas & Electric Corporation.

Proceeding under the authority of article 14-A of the General Municipal Law, the Trustees of the Village on September 8, 1939, enacted an ordinance which set forth: a proposed method of constructing '' a plant and system for the generation, furnishing and transmission of electrical energy for municipal, domestic, residential, commercial and industrial uses ''; the maximum cost, $360,000, and cost as estimated by the Board of Trustees, $350,000; a plan for financing the project with $360,000 of bonds, bearing interest not exceeding 6% per annum, to be issued on the faith and credit of the Village, to mature in annual installments of $18,000 each, and for the payment of the principal and interest of which taxes will be levied each year if funds are not available for such payment in revenues from the project. The ordinance also fixed the method of furnishing the public utility service to the community.

The Village Clerk, with the advice of the Village Attorney, then prepared an abstract of the ordinance concisely stating its purpose and effect, and the Village Board of Trustees fixed December 8th for the holding of a special election at which the proposal was to be submitted for the approval or disapproval of the electors. The ordinance and notice of its submission were then published in a local newspaper, designated by the Board of Trustees, once each week for six consecutive weeks beginning October 27, 1939. A special election was held on

December 8, 1939, and a majority of the qualified electors of the Village cast their votes in favor of the proposal.

Counties, cities, towns and villages were granted power to establish, own and operate public utility services by section 360 of article 14-A of the General Municipal Law in 1934 (L. 1934, ch. 281). Insofar as villages were concerned, the statute provides that the proposal to establish such services, including the method of constructing, leasing, purchasing and acquiring the plant and facilities, with maximum and estimated costs, the plan for financing the project and the method of furnishing the services shall be " fixed " by an " ordinance " enacted by the board of trustees of the village for submission to the electors of the village.

When this statute was enacted in 1934, section 90 of the Village Law (L. 1927, ch. 650, § 7) in broad terms authorized the board of trustees of a village to enact, amend and repeal ordinances not inconsistent with existing law, for the government of the village, the management of its business, the preservation of good order, peace, health, safety and welfare of its inhabitants and the protection and security of their property, whether such authority was specifically granted by the Village Law or any other law or necessarily implied therefrom. It required no public hearing before such ordinances were enacted, amended or repealed. In 1936, section 90 of the Village Law was amended to read as follows: "The board of trustees after a public hearing shall have power to enact, amend and repeal ordinances ", et cetera (L. 1936, ch. 701), and it is now claimed that this amendment of the Village Law became at once a procedural requirement of section 360 of the General Municipal Law. We do not agree with this conclusion. Section 360 prescribed a complete and detailed procedure for the establishment of municipal public utility services by popular referenda of specific plans formulated and proposed by village trustees. The Legislature as part of this procedure prescribed the enactment of a village ordinance containing the proposal of the trustees for submission to the electors. At that time there was no requirement of a public hearing in the process of enacting an ordinance, and failure to require any such hearing in section 360 evidences the legislative intent that such hearings should not be required, full opportunity for

public discussion and consideration having been provided by weekly publications of the plan in all its essentials for six weeks prior to submission to the electorate. The subsequent amendment of the legislative process of enacting village laws should not be read in limitation of the authority granted by section 360.

The question whether one statute absorbing or incorporating by proper reference provisions of another will be affected by amendments made to the latter, is one of legislative intent and purpose. 'Here the special purpose of the ordinance and the inclusion of provisions which so adequately afford opportunities for public discussion lead to the conclusion that the Legislature did not contemplate the inclusion of procedural changes subsequently made in the general provisions for the enactment of ordinances. Accordingly, the subsequent amendment of the Village Law requiring a public hearing before enactment of ordinances is not to be read as having been incorporated as one of the procedural requirements of section 360 of article 14-A of the General Municipal Law. (*Knapp* v. *City of Brooklyn*, 97 N. Y. 520; *Matter of Alter'g, etc., Main Street, Sing Sing*, 98 N. Y. 454; *Hassett* v. *Welch*, 303 U. S. 303; cf. *American Bank* v. *Goss*, 236 N. Y. 488.)

The General Municipal Law, section 360, subdivision 5, requires that the special election be called in the same manner as provided in the Village Law for the submission of a proposition at a special village election and, further, that the submission shall be in the manner provided by and in accordance with the provisions of the Village Law for the submission of any other question by referendum on petition " except that the referendum on the proposition provided for in this section shall be mandatory." The Village Law, section 139, defines the acts or resolutions of the board of trustees that are subject to referendum on petition and, so that there may be opportunity for consideration and preparation of a petition, provides for the publication of a notice within ten days setting forth the adoption of any resolution by the board of trustees which is subject to permissive referendum. Concededly, no such notice was posted or published in this case. This we think was not necessary. The only purpose of the notice required to be

posted and published by section 139 is to afford an opportunity for the circulation of a petition in accordance with the provisions of section 139-a which must be signed by at least twenty per cent of the electors of the village if there is to be any referendum. Neither the notice nor the petition has any possible relation to a mandatory referendum. It is therefore excluded from the requirements of subdivision 5 of section 360 which limits the requirement that " submission " shall be in the manner provided by the Village Law by the exception " except that the referendum on the proposition provided for in this section shall be mandatory." Plainly, a requirement relating exclusively to the opportunity to prepare a petition and procure the necessary signatures was within the intended operation of this exception.

Before its amendment by Laws of 1943, chapter 710, General Municipal Law, section 362, required that " the amounts and terms " of bonds to be used in financing the cost of village utility services should be included in the proposition submitted to the qualified voters of the village in the mandatory referendum. This language must be read in connection with Village Law, section 129, and General Municipal Law, section 9. The Village Law section prohibits the issuance of bonds at a rate of interest exceeding six per cent and also prohibits the issuance of bonds for less than their par value. The General Municipal Law section requires the issuance of village bonds by a public sale in which the premium and the interest rate are fixed by competitive bidding. These statutory provisions cannot be harmonized if the former section 362 is construed to require a statement of the interest rate in the proposition submitted to the voters, since the interest rate will not be fixed until the bonds are sold. Quite obviously the Legislature could not have contemplated as one of the terms of the bond to be published prior to the referendum the rate of interest, which can only be determined thereafter by competitive bidding on the sale of the bonds. We are therefore constrained to hold that this section did not require publication of the interest rate in the proposition submitted to the voters.

Despatch Shops, Inc., questions the constitutionality of the ordinance on the ground that it is subject to possible taxation for a municipal plant which " is to be built to serve the exclu-

sive interests of others without any benefit whatsoever to the Despatch Shops." We find no support for this contention in fact or in law.

Despatch Shops, Inc., is the largest single taxpayer in the Village. It has consumed very large quantities of electric current in its manufacturing business, fluctuating from 1,000,000 k. w. h. per annum to 6,000,540 k. w. h. per annum. The generating plant proposed to be constructed by the Village will not be of a capacity large enough to supply the demands of the Village and of its inhabitants, including the maximum demands of Despatch Shops, Inc. The estimated cost of constructing the public utility service, including the generating plant and distribution system, which has been approved by the voters of the Village is less than $360,000. The capacity of the proposed generating plant is 1,350 k. w. It would require the construction of a generating plant of about 5,000 k. w. capacity, at a cost of approximately $900,000, to generate sufficient electric current to supply the Village of East Rochester and its inhabitants, including Despatch Shops, Inc., with their full requirements for all uses.

The Village may borrow only $372,462.22 before reaching its debt limit and will reduce this margin to $12,462.22 by the proposed bond issue. It cannot build a plant of sufficient capacity to supply all of the requirements of the Village and its inhabitants, including the industrial uses of Despatch Shops, Inc.

All of these requirements are now being supplied by the plaintiff-intervener Rochester Gas & Electric Corporation, with which the proposed utility service will compete in the sale of electrical energy in the Village. From this source Despatch Shops, Inc., is procuring its electrical energy at a price considerably lower than the Village plant as projected could afford to sell such power. Thus it was that, in preparing the plans and specifications for the plant, the trustees of the Village felt warranted in concluding that Despatch Shops, Inc., under present conditions would not be a customer of the local plant.

There is no suggestion either in the ordinance or in the proposition approved by the electors, or any legal requirement anywhere, that Despatch Shops, Inc., will not be permitted to purchase power from the municipal plant. The ordinance is

therefore not open to constitutional attack on grounds of discrimination, unless it may be said that no municipality may build a municipal public utility unless the utility is of sufficient capacity to supply all of the needs of its inhabitants. Whatever the capacity of such a plant may be, the remedy for discrimination in its administration is to be found before the Public Service Commission under sections 65 and 66 of the Public Service Law. The Commission has ample power to compel the continuance of existing service and the extension of additional service. (*New York Tel. Co.* v. *Jamestown Tel. Corp.,* 282 N. Y. 365, 374; *United Gas Co.* v. *R. R. Comm'n.,* 278 U. S. 300, 308.)

There remains only the contention that taxation without direct personal benefit is a deprivation of property without due process of law.

The proposition approved by the electors and the ordinance provide that a sufficient tax shall be levied each year to pay the principal of and interest on the bonds as the same shall become due, to such extent as funds are not available for the purpose in revenues of such project. There is no suggestion that this tax will not be assessed against all the village taxpayers; indeed, it is the complaint of Despatch Shops, Inc., that such taxes, if needed, will be levied against all taxable property within the Village upon an *ad valorem* basis. Taxes so levied are not arbitrary or discriminatory merely because they are spread over such property on an *ad valorem* basis; nor where the *ad valorem* tax is thus general does its validity depend on the receipt of some special benefit as distinguished from the general benefit to the community. (*Memphis & Charleston Ry.* v. *Pace,* 282 U. S. 241, 246.) Moneys thus raised may constitutionally be applied to purposes from which the individual taxpayer receives no benefit, and indeed may suffer serious detriment. (*Nashville, C. & St. L. Ry.* v. *Walters,* 294 U. S. 405, 429–430.) Special assessments of real estate for improvements are in a different category, but even in such cases there is no unconstitutional discrimination because of the nonreceipt of direct benefits unless the facts are deemed sufficient to show action " palpably arbitrary and a plain abuse " of power. (*Valley Farms Co. of Yonkers* v. *City of Yonkers,* 231 N. Y.

558; affd. 261 U. S. 155; *Houck* v. *Little River Drainage District*, 239 U. S. 254, 262, 265; *Miller & Lux* v. *Sacramento Drainage Dist.*, 256 U. S. 129; *Missouri Pac. R. R.* v. *Road District*, 266 U. S. 187, 190.) In *Valley Farms Co.* v. *Westchester* (261 U. S. 155, 164, affirming the decision of this court in the same case, 231 N. Y. 558) the rule was thus stated, and *Myles Salt Co.* v. *Iberia Drainage Dist.* (239 U. S. 478) and other decisions, were distinguished because such facts were present. Here no such situation is presented either by allegation or proof.

Nor are there any facts disclosed by this record from which we may conclude that the Despatch Shops, Inc., will suffer any detriment whatsoever. The courts below have found that the proposed plant will operate upon a self-liquidating basis and that if losses should be incurred they may be met by an increase of rates. Whether such prophecy has the certitude of fact may perhaps be open to question, but a contrary conclusion would be too speculative to support the claim of unconstitutional taking of property through illegal taxation.

The judgment should be affirmed, with costs.

LEWIS, J. (dissenting). My dissent from the decision about to be made has as its basis the fact to which the Appellate Division opinion refers — that " There is no doubt that the project as passed on by the voters provides for a plant which will be sufficient to generate only power enough to furnish the same to those users in the village, *other than Despatch Shops, Inc.*" (262 App. Div. 556, 566.) (Emphasis supplied.) The ordinance adopted by the Village of East Rochester to erect a municipal plant for the generation of electricity for light, heat and power, pledges the faith and credit of the village " * * * for the payment of the principal of and interest on * * * bonds " to be issued to meet the cost of the project. The ordinance also provides that — " A sufficient tax shall be levied each year to pay the principal of and interest on said bonds as the same shall become due to the extent, if any, that funds are not available for the purpose from revenues of the project." As I view the problem, the fact that the proposed municipal plant will " generate only power enough to furnish the same to those users in the village, *other than Despatch Shops, Inc.*", when considered with the further conceded fact that Despatch Shops, Inc.— a local tax-

payer — will be called upon to pay its *pro rata* share of principal and interest on the bonded debt thus to be incurred, subjects that corporate taxpayer to an " unreasonable prejudice or disadvantage " in violation of section 65 subdivision 3 of the *Public Service Law.* (See *Gaynor* v. *Marohn,* 268 N. Y. 417, 430.)

In that connection it is to be noted that the statute (*General Municipal Law,* § 360, subd. 2), under which the respondent Village claims its power to undertake the project here involved, authorizes it to construct and operate the proposed public utility as an agency to furnish service " *to its inhabitants,*" not to a portion thereof. The decision in effect construes the statutory phrase " to its inhabitants " as meaning that the service to be furnished may be " to its inhabitants " except a single taxpayer. In this instance that single taxpayer — although denied special benefits to be afforded other inhabitants — concededly may be called upon to pay a large portion of the principal and interest of the bonded debt to be incurred. Insofar as the project will afford to other inhabitants of the Village special benefits which are denied to Despatch Shops, Inc. — although that corporation may be called upon as a taxpayer to meet its share of the cost and maintenance of the plant — I believe the plan as now formulated will result in an unconstitutional taking of property through illegal taxation. (See *Myles Salt Co.* v. *Iberia Drainage Dist.,* 239 U. S. 478, 485.)

LEHMAN, Ch. J., LOUGHRAN, RIPPEY and DESMOND, JJ., concur with THACHER, J.; LEWIS, J., dissents in memorandum in which CONWAY, J., concurs.

Judgment affirmed.