OPINION OF THE COURT
Edmund L. Shea, J.
In 1974 the Town of Massena passed a bond resolution for the purpose of establishing a municipal electric utility system.
Proceedings were commenced in St. Lawrence County Court to appropriate certain parts of an existing system owned by Niagara Mohawk Power Corporation.
On February 22, 1977, the County Court rendered a decision after an extended trial dismissing the proceedings. This decision held that the Town of Massena in its attempt to establish its electric utility system had materially departed from the authorization contained in the 1974 bond resolution.
After this decision was rendered, Niagara Mohawk Power Corporation moved on notice to enter judgment.
On March 17, 1977, the Town of Massena moved in County Court for an order granting a stay of the entry of such judgment on the grounds of "newly discovered evidence”. The "newly discovered evidence” consisted of the fact that on March 17, 1977, the town board had passed a resolution which it alleged would correct the deficiencies that the County Court had found in Massena’s condemnation petition. The resolution was thereafter to be put to the voters at a special election to be held on April 19, 1977.
The County Court denied Massena’s motion for a stay for two reasons: first, that the Town of Massena had allowed more than 15 days to elapse from the date of the filing of the decision (CPLR 4405 requires such a filing to be made in 15 days); second, the Town of Massena had failed to show how the March 17 resolution, if passed on April 19, could be termed "newly discovered evidence”. (Town of Massena v Niagara Mohawk, County Ct, St. Lawrence County, April 7, 1977.)
The County Court, by its decision (supra), denied Massena’s motion for a stay of the entry of judgment and directed the entry of judgment dismissing the condemnation proceeding.
After the affirmative vote by the electorate at the April 19, 1977 special election, the Town of Massena moved before the County Court to vacate the judgment entered in favor of Niagara Mohawk Power Corporation based on the passage of
*589 the "amendatory” bond resolution. The County Court by a decision dated May 5, 1977, denied this motion stating therein that (even assuming there was authority for enacting the "amendatory” resolution within section 41.00 of the Local Finance Law) such resolutions could not serve as the basis for postjudgment relief but instead constituted authorization for the Town of Massena to commence a new proceeding for condemnation within the scope of the resolution. (Town of Massena v Niagara Mohawk, County Ct., St. Lawrence County, May 5, 1977.)
The Town of Massena has now appealed to the Appellate Division raising all the issues contained in the proceedings to date — including the County Court’s decision not to vacate the judgment in favor of Niagara Mohawk Power Corporation.
Niagara Mohawk Power Corporation now brings a taxpayers action in Supreme Court to set aside the "amendatory” resolution as passed at the April 19, 1977 special election.
This action comes before this court on a motion for summary judgment made by both parties.
In the original oral argument by Niagara Mohawk Power Corporation at the June 27, 1977 Special Term in Canton, New York, Niagara Mohawk conceded that if the Appellate Division reversed the decision of the County Court, then the issues raised in this taxpayers action would be decided and the issues raised on the motions for summary judgment would become moot. This court stayed decision pending the decision of the Appellate Division. (Niagara Mohawk Power Corp. v Town of Massena, Supreme Ct, St. Lawrence County, Aug. 2, 1977.)
Niagara Mohawk Power Corporation now moves for reargument taking the position on this reargument that there are issues which will not become moot and that a decision from this court will be necessary regardless of the determination by the Appellate Division. Niagara Mohawk contends that neither the validity of the "amendatory” bond resolution nor the question of whether the original resolution is superseded by the "amendatory” bond resolution is before the Appellate Division, and that a decision at this point will tend to simplify the issues on appeal.
This court has now come to the conclusion that a decision on this matter may provide a vehicle for bringing a speedy resolution to all the issues involved which have been in the courts for several years.
*590 The original resolution passed by the voters of the Town of Massena provided for the establishment of a municipal electric utility system and, among other things, provided for the acquisition of such a system from Niagara Mohawk Power Corporation by condemnation. Once acquired, the resolution provided for the construction of a substation and a transmission line, together with a plan for purchasing power from the Power Authority of the State of New York over its transmission system and temporarily over the Niagara Mohawk system until a direct interconnection could be completed. (Sections 3 and 4 of original resolution.)
The original resolution herein was brought on for a vote pursuant to section 360 of the General Municipal Law, preceded by the required six consecutive weeks of published notice.
After the decision of the County Court on February 22, 1977, the Town of Massena, as aforesaid, passed the so-called "amendatory” resolution and presented it to the people who passed it by a 3 to 1 vote.
The amendatory resolution was brought on for a vote pursuant to section 41.00 of the Local Finance Law, preceded by the posting of notice and publication 20 days prior to the election, which the Town of Massena urges was required by section 82 of the Town Law. It is obvious that the use of this statute was for the purpose of the Town of Massena moving by short notice in an attempt to bring the "amendatory” resolution into the County Court condemnation proceeding.
The preamble of the "amendatory” resolution declared that inasmuch as the County Court had found that the proposed method of providing public utility electric service constituted a material deviation from the original proposal to provide such service and furnishing said service, it was required that the original bond resolution be amended and presented to the people for approval or disapproval. Further, the resolution provided that it was desired to revoke in part and to amend in part the original bond resolution as to the proposed method of furnishing such service, declaring therein that the cost of the acquisition and the maximum amount of the cost of the system (as estimated at $4,500,000) would remain as stated in the original resolution.
Thus, the only changes in the new resolution pertained to the kind of system proposed to the people and did not in any *591 way change the maximum amount of money for which the town was authorized to bond itself.
Niagara Mohawk’s taxpayers action seeks to set aside the amendatory bond resolution as being invalid. Niagara Mohawk’s complaint sets forth five principal causes of action: (1) the amendatory bond resolution did not fix the method of furnishing service as is required by subdivision 3 of section 360 of the General Municipal Law; (2) there is no statutory authorization for an amendatory bond resolution; (3) the amendatory bond resolution did not include the provisions of the original bond resolution as is required by subdivision 5 of section 360 of the General Municipal Law; (4) the defendant failed to publish the amendatory bond resolution in one or more newspapers once each week for six consecutive weeks as is required by subdivision 5 of section 360 of the General Municipal Law, and (5) the amendatory bond resolution was adopted in reliance upon false representations.
The Town of Massena seeks summary judgment on the grounds that the original bond resolution established a municipal power system and that the amendatory bond resolution only revoked a portion of the original resolution. The Town of Massena argues that once the system was established changes in the system were not subject to the provisions of section 360 of the General Municipal Law. Niagara Mohawk, on the other hand, stands by the legal averments in its complaint requesting summary judgment on the grounds that no municipal power system was established under the original resolution and that any additional resolutions — so-called "amendatory”— require compliance with section 360 of the General Municipal Law as if a new system were being established. Thus, the central issue presented to this court is whether the Town of Massena was required to hold a new referendum pursuant to section 360 of the General Municipal Law when attempting to conform the original resolution to what Massena sought in condemnation before the County Court, or whether some form of shortened procedure was available to conform the original bond resolution to the County Court decision.
More specifically, Niagara Mohawk, by its second cause of action, interposes that there is no authority for an amendatory bond resolution either under section 41.00 of the Local Finance Law, nor any other provision of law, and that an amendatory bond resolution is invalid under section 41.00 of the Local Finance Law. Niagara Mohawk’s claim sounds in *592 the alternative. First, Niagara Mohawk argues that there is no statutory authority for an amendatory bond resolution; and second, Niagara Mohawk urges that even if authority is found, the specific provisions of section 41.00 of the Local Finance Law prevent an amendment to the original bond resolution due to the fact that bonds have already been issued pursuant to that resolution and because funds have been spent by the Town of Massena in furtherance of the purpose of the original resolution.
The Town of Massena controverts these allegations by claiming that the implied power to amend necessarily derives from section 41.00 of the Local Finance Law, and further that no moneys were spent on a transmission tie line and substation which were deleted from the original bond resolution by the amendatory bond resolution.
As a prelude to any discussion of the authority for an amendatory bond resolution, inquiry must begin with the general authority for a municipality to establish, own and operate a municipal power district. Section 360 of the General Municipal Law provides a municipality with the authority to establish a municipal power district. Pursuant to subdivision 3 of section 360, a town is required by a resolution of the town board to fix the proposed method of "constructing, leasing, purchasing, acquiring, the plant and facilities for such service, together with both the maximum and estimated costs thereof, and the method of furnishing such service”. As is further provided in subdivision 5 of section 360: "Any such action by the town board of a town shall be submitted for the approval of the electors of the town at the next general election to be held not less than ninety days after the adoption of such resolution; or at a special election called in the same manner as provided in the town law for submission of a proposition at a special town meeting or a special town election. Such submission shall be in the manner provided by, and in accordance with the provisions of the town law for the submission of any other question by referendum on petition, except that the referendum on the proposition provided for in this section shall be mandatory. Every such local law, village ordinance, resolution of the board of supervisors or resolution of the town board, as the case may be, and notice of the submission thereof, shall be published in one or more newspapers published within the city, village, county or town, as the case may be, to be designated by the legislative body of the municipal *593 Corporation affected, once in each week for six consecutive weeks immediately preceding such election”.
In essence, subdivision 5 of section 360 requires a public referendum on the resolution of the town board in the manner provided in the Town Law for submission to the voters of any other question by referendum on petition providing, however, that the election must be preceded by six consecutive weeks of published notice.
The financing of a municipal public utility service is accomplished independently from the establishment of such a service.[1] The financing of the municipal public utility service may be provided by levying taxes, "or the same may be financed in whole or in part pursuant to the local finance law.” (General Municipal Law, § 362.) Once bond financing is selected, subdivision a of section 35.00 of the Local Finance Law provides that the bond resolution "shall be subject to a permissive referendum or such resolution may be submitted to a referendum by such finance board on its own motion, in the manner prescribed in article seven of the town law, as amended from time to time”. Where the finance board, on its own motion, submits a resolution to a public referendum, the reference to the Town Law in the above-quoted passage necessarily implies reference to article 6 of the Town Law, specifically section 81, which governs elections upon proposition. (Town Law, § 81, subd 1, par [e].) Section 81 provides for the submission of the proposition at a special or biennial town election which in turn is governed by section 82 of the Town Law requiring publication and posting 20 days prior to the special election. (Town Law, § 82.)
Through this convoluted statutory scheme involving the General Municipal Law, the Local Finance Law and the Town Law, both the proposed creation of and the financing of a municipal public utility are subject to a public referendum. Pursuant to section 360 of the General Municipal Law, the *594 referendum for the establishment of a public utility service (hereinafter section 360 referendum) requires six consecutive weeks of publication prior to the election, while the referendum for the authorization of bonds for the financing of the public utility service (hereinafter bond referendum) may proceed under the so-called short notice provisions of section 82 of the Town Law.
The Town of Massena’s original referendum contained both a resolution authorizing the establishment of a public utility system and a resolution authorizing 4.5 million dollars in bonds. In that sense the original referendum acted as both a section 360 referendum and a bond referendum.
Once a section 360 referendum is held and approved, section 360 of the General Municipal Law further provides that the municipality may acquire the public utility company by purchase or condemnation. (General Municipal Law, § 360, subd 6.) In this condemnation proceeding, the plan for acquisition must materially follow the plan proposed by the town board and ratified by the electorate — the failure of which was the Town of Massena’s demise in its condemnation proceeding before the County Court. (Town of Massena v Niagara Mohawk Power Corp., County Ct, St. Lawrence County, Feb. 17, 1977.)
The Town of Massena, in order to correct the deficiencies found by the County Court without abandoning its plan of condemnation, now seeks to conform the original resolution to the plan of condemnation by way of an "amendatory” bond resolution.
Early New York case law is unclear on the question of whether a municipality is prohibited from rescinding or amending a proposition adopted and ratified by the electorate. It has been held that once the proposition is adopted it is binding upon the municipality having the force of a contract requiring the proper officials to take the necessary steps to make it effective. (Pine Grove Realty Co. v Town of Massena, 121 Misc 90; People ex rel. Osborne v Board of Trustees of Vil. of Bellport, 119 Misc 357. But, see, Matter of Eiss, 205 App Div 691, holding that the legislative body may reconsider a proposition once adopted and where the power resides with the voters that the voters may take such action.) In 1942 the New York Legislature at least partially resolved this dispute. Section 41.00 of the Local Finance Law was adopted which, as amended, provides that: "[a]ny municipality may at any time, *595 by resolution, repeal or revoke in whole or in part (a) any resolution heretofore or hereafter adopted authorizing the issuance of obligations * * * except to the extent that any indebtedness shall already have been contracted or encumbrances made thereunder for the object or purpose for which such resolution or certificate authorizes the issuance of obligations”. (Emphasis added.)
The Town of Massena contends that the power to legislate on a given subject, unless specifically restricted, implies the power to change or alter such legislation, and that section
41.00 of the Local Finance Law should be read to imply the power to amend. To substantiate this theory the Town of Massena argues that the section 41.00 power to repeal or revoke in whole or in part enables a municipality "to adopt one bond resolution and then to follow with the adoption of a second bond resolution totally different with a repealer clause of the first bond resolution contained within the text of the second bond resolution.” This, the Town of Massena claims, is only a difference of style and not substance.
The Town of Massena, however, strains to construe section 41.00 of the Local Finance Law beyond what the Legislature intended. It is clear that section 41.00 is limited to the repeal or revocation of bond resolutions whether or not they were subject to a bond referendum pursuant to section
35.00 of the Local Finance Law. Section 41.00, in essence, authorizes the repeal of unnecessary debt and has nothing to do with the repeal or revocation of the establishment of a public utility system created under section 360 of the General Municipal Law. The creation of the system and the financing of the system are separate and distinct. (See General Municipal Law, § 362; Local Finance Law, § 35.00, subd d; see, also, O’Flynn v Village of East Rochester, 292 NY 156, 163, recognizing the legislative change.)
As the New York Court of Appeals has stated, section 360 of the General Municipal Law "prescribed a complete and detailed procedure for the establishment of municipal public utility services by popular referenda of specific plans formulated and proposed”. (O’Flynn v Village of East Rochester, 292 NY 156, 161, supra.) Accordingly, the Town of Massena could not amend the original resolution authorizing the establishment of a public utility service by using the procedures for amending the financing of such a system. In the absence of compliance with the notice provisions of section 360 of the *596 General Municipal Law, the amendatory resolution could do no more than amend the financing of the system, which it clearly did not purport to do.
The Town of Massena finally argues that even if section 360 is applicable to the April 19, 1977 amendatory referendum, the election is nonetheless valid. The Town of Massena relies on the case of Matter of D’Addario v McNab (32 NY2d 84). In that case a proposition was submitted to the electorate under section 82 of the Town Law without the required notice by publication and posting. In affirming the Appellate Division’s nullification of the vote, the court drew the distinction between statutory requirements of notice — which are a condition precedent to a valid election — and other directory requirements with respect to which substantial equivalence will be acceptable (pp 87-88). The court noted (p 87): "Statutory requirements of notice by publication and posting for the submission of propositions are mandatory, and actual notice or substantial equivalences, will not be acceptable as a substitute unless there has been in fact some posting and publication to satisfy the statute.”
The town relies on the language quoted above "unless there has been in fact some posting and publication” together with section 83.00 of the Local Finance Law, to claim substantial compliance on its part in publication of the amendatory bond resolution. Section 83.00 of the Local Finance Law provides a substantial compliance standard in contests to the validity of municipal obligations. Section 83.00, however, being a Local Finance Law provision, does not relate to contests to the validity of a resolution purporting to amend a proposition adopted and ratified pursuant to section 360 of the General Municipal Law.
The Town of Massena overlooks the fact that Matter of D’Addario involved an election where the notice requirements were governed by section 82 of the Town Law. Section 82 of the Town Law requires a single publication in addition to posting on the town sign board. Where the Court of Appeals requires some publication — as it did in Matter of D’Addario— and only one publication is required by the statute involved in that case, noncompliance with the directory requirements of law pertaining to how and when publication is to be made will be overlooked, but the failure to comply with the condition precedent of publication will not. Substantial equivalence in that sense requires compliance with what the Legislature has
*597 determined to be a condition precedent, i.e., publication, which should not be confused with actual publicity. (Matter of D’Addario, supra, p 89.)
Unlike section 82 of the Town Law, section 360 of the General Municipal Law requires publication in one or more newspapers "once in each week for six consecutive weeks immediately preceding such election” (§ 360, subd 5). The Legislature has determined that as a condition precedent to a valid election, six consecutive weeks of notice must be given. The Town of Massena failed to do so which renders the town’s "amendatory” resolution defective and a nullity.
To summarize, where a municipality adopts a plan for the acquisition of a municipal electric utility service pursuant to section 360 of the General Municipal Law and then seeks to effectuate a material and substantial change in its plan for acquisition of the system and the method of furnishing service, prior to condemnation of the system, then such a change must be made in compliance with the requirements of section 360 of the General Municipal Law — including six consecutive weeks of notice. This the Town of Massena failed to do.
Accordingly, the Town of Massena’s motion for summary judgment is denied.
Niagara Mohawk’s cross motion for summary judgment declaring the amendatory bond resolution invalid is granted on the grounds that: (1) the purported amendment of the original bond resolution is not authorized under section 41.00 of the Local Finance Law; and (2) that the defendants failed to comply with the publication requirements of subdivision 5 of section 360 of the General Municipal Law in failing to publish the "amendatory” bond resolution once each week for six consecutive weeks. The court does not reach the other issues raised by the plaintiff.

. As originally adopted (L 1934, ch 281, § 1) subdivision 2 of section 360 provided that the "plan for financing such project” shall be fixed by local law and section 362 provided for the specifics of financing the project by bonds. In 1943 and 1945 sections 360 and 362 were amended to reflect the adoption of the Local Finance Law. Section 360 was amended to remove the requirement that the plan for financing must be included in the proposal for the establishment of a municipal power system (L 1943, ch 710, § 821); section 362 was amended to remove the specifics of bond financing (L 1943, ch 710, § 822) and section 362 was further amended to include the present language authorizing financing pursuant to the Local Finance Law (L 1945, ch 838, §32).